of America and Linda Ayer. Mr. Morris, I think we're going to hear from you first, and you may save time for rebuttal. Just keep an eye on the clock. That's your decision. Thank you. Good morning, Your Honors. As you've been able to see from the briefing, this has been a long, ongoing dispute with the issue, as you know, of whether or not the Indian Colony is to who controls the Winnemucca Indian Colony and specifically who is on the Colony Council. What occurred in this matter is the Walsing Group, the appellees in this matter, were not being recognized by the BIA. Due to the length of time it was taking for this matter to go forward, the Walsing Group, while the BIA was still making decisions, decided to go ahead and file another court action. In this court action, they filed, eventually, an amended complaint. And in their amended complaint, they requested several things, but nowhere do they request some sort of recognition. Nor could the court give any such recognition. The main issue here is the trial court never had jurisdiction to make any decisions. It's well settled law that a district court cannot get involved in and that's what was going on here. Are you saying there's no jurisdiction for that reason or because there wasn't a final agency action or both? It's both. You can look at them individually. So there was no final order, as you mentioned, because it was still ongoing. But there was also no jurisdiction because the court could not get involved in an election dispute. Even if the court could, the agency had not finished the processes. What's your answer, Mr. Morris, when I take the district court to be saying that the Bureau of Indian Affairs had these matters before it for a very long time and it essentially had just taken too long and it wasn't the possibility of the resolution there, one way or the other, was just not likely? Well, that was not analyzed. That's going to futility. It's an assumption that, oh, it was taking so long that something needs to be done. We know there were many appeals, many issues going on, and during each of those stages, the Wasserman Group was not following what it was supposed to do. One appeal was untimely. It was dismissed. Another time, they were ordered to do a briefing. They did not do that. In this case, what was going before this court is they were ordered to provide information to the BIA so they could enter some sort of decision, and instead of doing that, they then came to this court and filed their action. There was just no analysis whatsoever of futility, and we argue that it was the Wasserman's own action that caused all these delays. I think it's important to recognize that the BIA was not required to recognize anybody for the government. The Air Group, who I represent, has never requested official recognition, so the issue as to who controlled the tribe was not really before them. It was more before them. Should the Wasserman Group be recognized for government-to-government relations? The Air Group had the tribe running self-sufficiently. No government grants were requested. There was no need for some sort of government-to-government relations or government-to-government recognition. The Wasserman Group simply did not like that. They wanted recognition, and so they kept filing the appeals. But, of course, during this, the Air Group had to participate to show that the Wasserman Group was not proper. So, going to the, again, the amended complaints, the issues simply were not put before the court. What transpired later... Mr. Morris, at this point, there obviously have been a number of other elections since the district courts began this process. I mean, there were some other elections that happened while the district courts still had the case. I imagine, just based on the tribal constitution, have there been even further elections since that time? Let me... I have a Part A before I get to your answer, which I'll call it Part B. After, as brief, there was a, what's called a Minnesota panel order to basically reestablish the tribe, saying both sides have done things improperly. Here's who we recognize. Here's what you need to do going forward. So, before this court action was filed, but after the Minnesota panel order was entered, elections were held, which the court never looked at. The court simply went back to the Minnesota panel order. Now, in doing so, the court then started holding elections. We hold this as completely improper. The court recognized the Wasserman Group as the council to determine who gets to run in the election, who gets to vote in the election, who are members to be in the election, and the court is now making decisions on purely intertribal issues as to who even can participate in the election. Once those occurred, yes, the Wasserman Group elected themselves where they had 30 people allowed to vote, and I believe 17 did vote, which is far from the 77 plus or the 98 that other district courts recognized. So, yes, an election was held, and we're disputing that. That is what's leading to the final order that this colony is now controlled, run by the Wasserman Group, who only one individual ever resided in Nevada from the Wasserman Group. Our group, the Ayer Group, has been residing on the reservation and running the government for many years. I guess what I'm trying to understand is there have been a series of actions taken by the different groups as well as tribal courts and having elections and then reviewing the results of those elections. So you're asking for the district courts for this case to basically be dismissed. What is the consequence of that for all these other elections and for the present time? Because it seems to me that that would be a question for the tribal courts. The consequence of this dismissal, based on lack of jurisdiction, is those elections would not have been properly held. That would go back to the BIA to make the decision as to who should be controlling the elections. The Ayer Group, of course, has been submitting that they're allowing multiple people to participate. Possibly 100 individuals have been recognized as members versus the Wasserman Group, allowing only a handful of individuals to participate. So it would undo the elections. It would put us back to where we were before the court order. It would let the BIA make its own decisions versus Judge Jones stepping into the BIA acting director's shoes, stating he's going to make the decisions and then ordering the BIA what to do. Counsel, can you just enlighten me as to where this reservation is located? It is in the middle of Nevada. It is directly between the east part of Nevada and the west part of Nevada. It is a few hours from Fallon going east, if you will. So that's Winnemucca. It is an established city, but it is a smaller rural city. I'm sorry, Rhonda, you just cut out. I'm sorry. What is at stake here in the control of this tribal government? The primary stake is who gets to reside on the reservation. We have many people that have been living there their entire lives that are now being given eviction notices. One individual passed away and was not allowed to be buried on tribal land. There's a lot at stake. This is not simply a financial issue. This is where everyone has lived their entire lives and who now gets to control what's going on. We had an administration building. We had that operational. We had a smoke shop operational. The tribe was always sufficient. I guess what I can't understand is why hasn't this resolved itself? This is very expensive to keep litigating these issues. Well, it is expensive, Your Honor. It's the Wollstone Group that keeps bringing this up because they don't like the fact that the BIA has not recognized them. The Air Group and the individuals on the colony, which is important to recognize, just desire to live there in peace. One of the themes here is when you're looking to decide whether an order is proper, is it the will of the people? So when orders are reviewed, including from the district court or from an agency, just because one's claiming to be the council, when in doubt, look to what is the will of the people. In this case, it can't be those that don't live on the reservation, and it can't be 17 individuals that self-elect themselves. And I'd like to reserve the remainder of my time. Okay. Thank you, Mr. Morris. Ms. Hearn, good morning. Good morning. Thank you. If it pleases the panel, I am Treva Hearn, appearing on behalf of the Winnemucca Indian Colony, as I have for the last 20 years in this litigation. Since March of 2000, I have represented the Winnemucca Indian Colony through the aftermath of the murder of their chairman on the colony grounds, through 20 years of litigation in the tribal courts, Interior Board of Indian Appeals, federal courts, including a failed certiorari to the United States Supreme Court, against this court by the appellant's hearing. Ms. Hearn, can I ask you, at the time this action was brought, do you agree there was not a final agency action? You know, and I've disputed that myself, looking at what has occurred and occurred at that time. I always have depended upon the fact that it was futile, and that there was no end agency action. But as the appellants pointed out, what was before the BIA at that time was our request that they remove the people who were trespassing on the lands of the Winnemucca Indian Colony. And by the way, you know, I'm sorry to dispute the appellants just so completely, but most of their folks do not live on the lands of the Winnemucca Indian Colony. There are no real... To go back to the jurisdictional question, I take it from your answer, and it did seem that this is where the district court went as well. It was not a final agency action, but it was in the district court's judgment futile. And I want to ask you about that, because at the time that the action was brought, the IBIA had sent this back to the BIA, and the BIA was in the middle of some type of process, and then this lawsuit was brought soon after. So what basis do you have to say that it was futile to continue before the BIA? The matters before the BIA were whether there was trespass upon the lands of the Winnemucca Indian Colony by the persons that are represented in the appellants. At that time, our client, my clients, went back onto the 320 acres to clean up some of the work that had been done and do some construction. And they were threatened with arrest for trespass. Now, is it futile when the BIA has determined that your clients are now being arrested for trespass when the issue before them is who is trespassing upon the lands? Certainly, it was the fourth time we were before a federal court on issues that were causing a problem. The BIA had made an error in 1972 when they allowed everyone to move onto the lands, whether they were a member or not. In 1986, they realized that problem, and they removed persons who were the predecessors and interests of the appellants and said, In 1986, you do not qualify to be members of the Winnemucca Indian Colony. If you want to participate in the Paiute Judgment Fund, you must not be in this colony and acting as counsel. Immediately after that, the true members of the colony were sought, that being Glenn Wasson and those persons. Why had they left the colony? There are lots of reasons that they had left, but they were returning. And in 1988, they were recognized as the colony counsel. The BIA did a full research determining who qualified. There is a lot of history here, and we appreciate that. I guess the issue I'm very focused on is, in the fall of 2011 and the summer of 2011, when there were active proceedings in front of the BIA following the IBIA remand order, why was it futile to continue before the BIA at that point in time? What happened that caused it to become futile at that moment? The issue before the BIA was who was trespassing on the lands of the Winnemucca Indian Colony. The officers of the BIA police entered the property along with my clients and threatened to arrest them for trespass. So that means that the decision of who was trespassing was being made prior to there being a decision, or the briefs even being filed before the BIA. They were going to determine that my client should be arrested for trespass. And that is why it was futile. Not only that, but we were then looking at 11 years that had passed. Now, in 2002, Wayne Nordwall, who was the superintendent of the BIA in Phoenix, had stated that all you have to do is these things. And that's in the record, Your Honor. He said, you have to just do these things. Well, in 2008, we had done all of those things. The Honorable Brian Sandoval had entered an order granting comedy to the Minnesota Order. The Minnesota Order determined that the majority of the council were the people that I represent. And that was enough for recognition. And yet, the BIA refused. We followed through on every single administrative request to be recognized. And, Your Honor, in this case, even if you determined to reverse the court and say they didn't have jurisdiction, what changes? What made the determination was to finally have a tribal court decision that everybody agreed to and everybody participated in. I did ask that question of your friend on the other side. If the matter is reversed or dismissed, what then happens to everything that's happened since? And would you agree that's at least a question for the tribal courts in the first instance? Your Honor, they've already made their decision and even affirmed it on reconsideration. If the appellants want a different decision, they have to put in an application for membership and challenge it just as the lower court decided. The lower court said, file your applications. Bring it before this council. Show them why you're qualified to be members. Each individual would do that. But the reason the court said, the tribal court of appeals said, you have no standing. You failed to go through the application process. That was what we asked you to do. That's what needs to show why you have standing to challenge the decisions of this colony council. And that's exactly, as I would point out, what happened. And I would show you the parallels in Goodface v. Grass Rope, which the lower court relied upon heavily. The only difference was that in Grass Rope, there was an elected council versus a prior council. So they were already established who the members were. And in this case, it was members versus people who have never proved that they are members. Never submitted. Have been researched by BIA and not proven that they are members. But it was the same. It was an election issue. And the same in Grass Rope. The federally recognized tribe, they are both federally recognized tribes. The same. They both requested recognition. The same. BIA appeal process was not exhausted. Do you know why Mr. Morris can comment on this too? Do you know why the Bureau of Indian Affairs is not an appellant here? Yes, they withdrew their appeal. They are not appealing. Have they? And neither is William Biltz. And they have recognized our council. And as I said, the reason it's so critical, the other thing the appellants argued was, well, it isn't critical to have a decision to recognize a government. Of course it is. Now this colony's council has qualified for nearly $4 million in grants to rebuild that colony. Why is the government important? These people were living without sewer hookups. They were living without their roads repaired. They were living without services. And that's what's so important is that's why you need recognition. It's a small colony in the middle of Nevada. There are two parts of it. There's a 20-acre parcel where people live. There's 320 acres where we now have economic development. But in order to qualify for those grants to build that community, you have to have a recognized government. That's why the futility issue becomes very important and why there was jurisdiction by the federal court. And what else was he to do? He was the fourth federal judge that had it brought before him, the second magistrates who had it brought before them. There needed to be an answer. There needed to be a resolution. By then, it had been 11 years. By the time it was done, it was 18 years. But this colony had no government. The only police force was a part-time officer coming in from BIA. Now we're contracting to get police. We have a police station. We have those things that persons expect when they live in a society where there's a government. Now that we have a pandemic, we even see more reason why there needed to be a recognized government. Ms. Hearn, how do you respond to the point that's made by the other side that challenging the district court's decision to essentially reverse the BIA on its selection of bills as opposed to air At the point that the district court had said, you know, it would seem the BIA could choose either one of them. The BIA chose bills. And then the district court concluded that that was an abuse of discretion. And the appellant has argued, you know, that that decision wasn't arbitrary and capricious because it was a basis for selecting bills over airs. How do you respond to that? Well, first of all, there had been adequate information. The certified birth certificate filed with the BIA in the year 2000 at the end that he was not. He was zero percentage Native American, unfortunately, in this country, horses, dogs and Indians. But that wasn't the district court's basis for. No, it was because they had. And Mr. Bills has not appealed. Mr. Bills was a third party and he has not appealed this. But he said they said that if you appoint both of them, that was the first decision. He said when BIA appointed both Blossom and Bills, they effectively paralyzed the government because they couldn't agree. And that was the same thing that had happened in Goodface versus Grassrop. You paralyze the government if you don't appoint enough people or a number two, they're going to be paralyzed. Now, definitely the argument that I made to the court was that he was not an Indian. And that is in the briefing papers. And so, yes, the court made his decision based upon that as well. I mean, these the appellants based their membership on the tutelage of a person who was 100 percent not Native American. Who at that point was claiming to be Native American has been proven since then that he is not. That's very important. As I said, the problem in this country is you do have to prove bloodline if you are going to be Native American. Something that we and Bills did not prove. And the appellants have never proved and never put before any tribal court their qualification as Native Americans. In 1986, when the BIA returned the land, returned the lands to persons who were qualified to be members, they had done thorough research. Now, the appellants were on, at least their predecessors were on the lands at that time. And the BIA said, you do not qualify to be members of the Winnemucca Indian Colony. And so, but they didn't remove the people who weren't members. They left that to the colony to do. The colony's government had to involve themselves in removing these people. The tribal court had two challenges from the appellants. One on membership, the other on elections. And the tribal court and the intertribal court determined without reservation that these people were not, had no standing and could not make that argument. And that will not change if you reverse the court and say that they can't grant comity to those decisions. There is no reason for the court, the tribal courts to change their decision. Until there is a challenge brought before them again, where these people claim to be Native American and then they have to put in all their paperwork, there's no reason for those, those very same appellate procedures to change. And they will not. And so this, this entire appeal is futile. That is why the government, it is important to note, the government has not appealed the decision that they were arbitrary and capricious. And they participated, and so did the appellants, in appointing a tribal court and having the intertribal court decide the appeal. All parties agreed and participated. Thank you, Ms. Hearn. Thank you. Mr. Morris. Thank you, your honors. I'm not sure where to begin. We just heard a lot of unsupported rhetoric, including the BIA has made determinations that these individuals are not Native Americans. That is not correct. That's not put before the court. We've heard arguments that the tribal court here, which was the district court, self-created tribal court, said, my clients have no standing. They did not prove they're Indians. That's not what was done. This was a sua sponte issue of, well, are you guys Indians? What the court actually stated is neither plaintiffs nor defendants, meaning the Wasson group, were found to be Indians. They made no decision whatsoever saying the issue of whether someone's an Indian or not was not put before us and we're not going to rule. That was not something either side contemplated since the district court sent this to a self-created tribal court, Judge Darrington, to determine election disputes. That was the issue that we were prepared to raise, not all of a sudden being blindsided by a sua sponte issue as you have no evidence that you're Indians. It's dismissed. Intertribal court of appeals found the same thing, but what is important here is we never agreed to this court. We were ordered to find a judge and participate in finding a judge and we put that down. We never willingly agreed to it. The BIA would not be doing all of the outrageous things alleged by opposing counsel if the BIA did not have concerns as to who these individuals are. There is a distinction between the BIA police giving a trespass warning and the BIA deciding who the counsel is. The BIA has to decide who the counsel is to make any decisions, including if there's a trespass or not, but that's not what was done here. What was done here is to find who is the counsel. The Minnesota panel order, the MPO, specifically recognized a list of 77 plus. My clients are in the list of 77 plus. There's been no finding. They're not Indians. That's entirely unsupportive. As to putting in an application to vote, to participate, that is what was the fallout of Judge Jones giving the Wasserman removed control. It was argued we attempted to do that. Applications were not allowed. We objected to not getting applications. Nothing happened. On its face, it seemed civil. We'll just fill out the application. That's not what was required. These applications had to be numbered. Applications were put in, rejected, saying, oh, you don't have an official numbered application. Every step of the way that my clients have tried to participate with the Wasserman group has been interfered with. And even though my clients state they did not need to apply, they were members, they were allowed to participate in the election, they attempted to follow through with what Judge Jones was saying. But what occurred was a de facto removal of tribal membership without due process. So the election itself is a farce. If you can't be recognized to vote, if you can't run the election, what is it? How can you look at the will of the people being delegated down to 17 individuals self-electing themselves? The BIA kept raising this over and over to Ms. Hearn and her clients in its letter stating, we've read the Minnesota panel order. We are concerned that you have yet again said there's only 17 numbers. That is the issue here. What letter are you referring to, Mr. Morris? I don't. It is in my briefing. I don't remember it. It is a letter from the BIA responding to, I believe, a request for recognition. It is also cited in my briefing. I apologize. I want to say it's an October 2nd or December 2nd letter, but I don't recall the year. And that's just one of the letters. But they specifically state this is a big concern, that you keep bringing this to us, and we're finding it does not comport with the Minnesota panel order. You can't pick and choose. You can't choose one part of it and ignore the rest. Everyone has said this is the starting point. That was never analyzed. If the district court is going to insert itself into making elections happen, deciding that, oh, it's long enough, I'm going to make the decisions for you, you are a conquered nation, then you at least need to look at all the evidence versus having preliminary injunctions granted, temporary restraining orders with no evidentiary hearings. Counsel, what is the significance of the fact that the BIA has not tried to challenge the district court's order? Well, you heard a lot that's not in the record. My understanding is it's purely a financial issue. For whom? The BIA, through the Attorney General's office, decided it's not putting any more money into this case and appeal it. I don't know the exact details. I believe it was initially appealed and it was dismissed through some sort of resolution. I'm not privy to that. But what is the significance for purposes of the district court's order? None. None. We have standing, and we are stating that we should have been a real party in interest involved in this, and it would have not had any effect if the BIA withdrew its appeal. We are a proper party, and we have the ability to challenge it. Thank you, Mr. Morris, and thank you, Ms. Hearn. Thank you both for your arguments this morning. Thank you, panel. The case is submitted.
judges: Schroeder, Bress, McShane